■ SANFORD NALITT et al., Respondents-Appellants, v CITY OF NEW YORK et al., Appellants-Respondents.—In an action, *inter alia,* for specific performance of a contract for the sale of real property, (1) the defendants appeal (a) from an order of the Supreme Court, Richmond County (Leone, J.), dated July 8, 1988, which denied their motion to cancel the notice of pendency filed by the plaintiffs in this action, (b) from an order of the same court, dated June 22, 1989, which granted the plaintiffs' motion to extend the notice of pendency, and (c), as limited by their brief, from so much of an order of the same court, dated October 3, 1989, as denied their cross motion for summary judgment, granted partial summary judgment to the plaintiffs, and granted the plaintiffs leave to serve an amended and supplemental complaint, and (2) the plaintiffs cross-appeal from so much of the order dated October 3, 1989, as denied as academic their motion to compel the production of certain documents.

Ordered that the order dated October 3, 1989, is reversed insofar as appealed from by the defendants, the defendants' cross motion for summary judgment is granted, the complaint is dismissed, the plaintiffs' motion for leave to serve an amended and supplemental complaint is denied, and the notice of pendency is canceled; and it is further,

Ordered that the cross appeal from the order dated October 3, 1989, is dismissed as academic in light of the determination on the defendants' appeal from that order; and it is further,

Ordered that the defendants' appeals from the orders dated July 8, 1988, and June 22, 1989, respectively, are dismissed as academic in light of the determination on the appeal from the order dated October 3, 1989; and it further,

Ordered that the defendants are awarded one bill of costs.

The plaintiff Charleston Land Corp. is a company which was organized for the purpose of purchasing, developing, and managing a 50-acre site in Staten Island, known as the Charleston Commercial Development Center. The corporation's president and sole shareholder is the plaintiff Sanford Nalitt, an established developer of shopping centers and commercial facilities, particularly in Staten Island. In June 1982

the City of New York, acting through the Division of Real Property of the Department of General Services, and the Public Development Corporation, solicited developers for the Charleston Commercial Development Center by issuing a Request for Proposals (hereinafter RFP). Nalitt was the only developer to submit a proposal in response to the RFP, and on March 23, 1984, his company entered into a contract with the Public Development Corporation for the purchase of the Charleston site. The contract of sale provides, *inter alia,* as a condition precedent to closing, that the Inspector General of the City of New York "shall have raised no objections in connection with the transfer of the Property to the purchaser".

Approximately 13 months after the Public Development Corporation selected Nalitt to develop the Charleston site, an article appeared in the Daily News which suggested that former Staten Island Borough President Ralph Lamberti had engaged in unethical conduct by using his official position to benefit himself and his business partner, the plaintiff Nalitt. These allegations focused primarily upon a 1982 transaction in which Lamberti, while Deputy Borough President, invested in land purchased by Nalitt which was known as the Copperflagg property. On April 22, 1985, Lamberti requested the Department of Investigation (hereinafter DOI) to conduct an inquiry into the allegations raised by the Daily News article, and on June 21, 1985, the DOI issued a report which concluded that Lamberti's investment in Nalitt's land acquisition and subsequent conduct violated five conflict of interest provisions of the New York City Charter. The DOI report further determined that after the Charleston site came to Nalitt's attention in 1981, he approached Lamberti, who promoted the idea of a direct, noncompetitive sale of the property to Nalitt. According to the report, Lamberti also used his official position to promote Nalitt's demands that a Staten Island appraiser evaluate the Charleston site, and that residential as well as commercial development be permitted on the site.

Less than two months after the DOI issued its findings, the plaintiffs were informed by a Public Development Corporation official that all action related to the Charleston contract had been put on "hold" as a result of the Lamberti investigation. Thereafter, on April 16, 1986, the plaintiffs commenced this action to compel the defendants to go forward with their obligations under the contract. Two days later, by letter dated April 18, 1986, the Public Development Corporation notified the plaintiffs that it was terminating the contract because the

Inspector General had raised an objection to the sale based upon findings by both the DOI and the New York City Board of Ethics which indicated that Lamberti had inappropriately brought "his influence as Borough President to bear upon the City's land disposition process".

The defendants subsequently moved, *inter alia,* for summary judgment, contending that the contract was properly terminated based upon the Inspector General's objection to the sale. The Supreme Court denied the defendants' motion and instead granted partial summary judgment to the plaintiffs, concluding that the Inspector General's objection to the contract was arbitrary and capricious because it was based upon findings made by the DOI and Board of Ethics, neither of which had granted Nalitt an opportunity to appear before it to deny or explain the Lamberti allegations. We disagree.

It has been observed that " '[q]uestions of judgment, discretion, allocation of resources and priorities inappropriate for resolution in the judicial arena are lodged in a network of executive officials, administrative agencies and local legislative bodies' " *(Matter of Goodstein Constr. Corp. v Gliedman,* 117 AD2d 170, 177, *affd* 69 NY2d 930). Here, the Inspector General's determination that the Public Development Corporation's contract with the plaintiffs was tainted, and that its termination was required because of the appearance of impropriety created by Lamberti's involvement in Nalitt's investments, was a proper exercise of his discretion *(see, Matter of Goodstein Constr. Corp. v Gliedman, supra; Faraday Wood v Lindsay,* 507 F2d 1065, *cert denied* 421 US 948).

The power to revoke the designation of a developer of an urban renewal project was "squarely sustained" by the Court of Appeals in *Matter of Armere Holding Corp. v Bell* (37 NY2d 925, 926; *see also, Matter of Goodstein Constr. Corp. v Gliedman, supra).* In *Matter of Armere Holding Corp. v Bell (supra),* the Court of Appeals went on to say that the tentatively designated developer may not be subject to arbitrary action, and is " 'entitled to the "assurance, implemented by the right to a hearing which need consist of no more than an opportunity to deny or explain, that the [commissioner] has not acted arbitrarily or capriciously" ' " *(Matter of Goodstein Constr. Corp. v Gliedman, supra,* at 178, quoting *Matter of Armere Holding Corp. v Bell, supra,* at 927). Contrary to the Supreme Court's finding, the record establishes that the plaintiffs were provided with an opportunity to explain their position in hearings conducted at the DOI, and in meetings attended by their attorneys and the Corporation Counsel. Although the

failure of the Board of Ethics to afford the plaintiffs a hearing prior to the issuance of its advisory opinion has been called into question *(see, Matter of N v New York City Bd. of Ethics,* 139 Misc 2d 634), we find that the Inspector General's decision to object to the Public Development Corporation's contract with the plaintiffs was based primarily upon the DOI report and did not violate the defendants' duty to deal in good faith.

Moreover, "[i]t is not the function of the court to substitute its judgment for that of the agency reviewed, if agency action can be supported on any reasonable basis" *(Matter of Goodstein Constr. Corp. v Gliedman, supra,* at 184). At bar, the judgment of the Inspector General that Nalitt's involvement with Lamberti created an appearance of impropriety which tainted his contract with the Public Development Corporation provides such reasonable basis. As a condition of the contract has thus not been fulfilled, the parties are relieved of their contractual obligations, and their agreement cannot be specifically enforced *(see, Matter of Goodstein Constr. Corp. v Gliedman, supra; Lighton v City of Syracuse,* 188 NY 499). Accordingly, the defendants are entitled to summary judgment.

In light of our determination that the defendants properly terminated the contract based upon the Inspector General's objection, the plaintiffs' motion for leave to further amend the complaint to assert additional damages based upon the same operative facts as the original complaint must be denied as our review of the proposed amended and supplemental complaint and the record leads us to conclude that the proposed amendments are without merit *(see, Grayson v Town of Huntington,* 160 AD2d 835; *Hopper v Hise,* 131 AD2d 814; *Goldstein v Barco of Cal.,* 109 AD2d 817; *see also, Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106, 113).

Based on the foregoing, we do not reach the parties' remaining contentions. Mangano, P. J., Bracken, Rubin and Rosenblatt, JJ., concur.